UNITED STATES DISTRICT COURT OF MASSACHUSETTS

Civil Action No. _____

**MAN AGAINST XTINCTION** as *Citizen Attorney General*

v.

MASSACHUSETTS PORT AUTHORITY as *Defendant*

25 January 2021

---

VERIFIED COMPLAINT FOR DECLARATORY & INJUNCTIVE
RELIEF AND REQUEST FOR A JURY TRIAL

---

1.     This is an enforcement action — brought pursuant to the "citizen attorney general" provision of Section 11(g) the Endangered Species Act ("ESA"). **FN1** Citizen Attorney General Man Against Xtinction ("M. A. X." or "The People") is prosecuting the Massachusetts Port Authority ("Mass Port") for its engaging in ongoing and recurring prohibited conduct under the Endangered Species Act. Mass Port is engaged in the prohibited killing, injuring and otherwise prohibited taking ESA Listed Species of Whales and Sea Turtles. Defendant Mass Port's operating port facilities in the Port of Boston of ESA Listed Species is commercially soliciting and otherwise compelling large ships to transit across the designated ESA listed critical habitat of the Northern Right Whale that comprises almost all of Massachusetts Bay in order to dock at its facilities at the Port of Boston. **FN2** In doing so these ships routinely ram, kill, & injure Northern Right Whales and other members of species of Federally Protected Whales that reside in every month of the year in coastal waters crossed by the shipping lanes used by these large ships. **FN3**

---

[1] 16 U. S. C. § 1540(g)(A).

[2] 50 CFR § 226.203

[3] "Federally Protected Whales" consist of four species of whales listed as protected species under the ESA. These listed species of whale are the Northern Right Whale (*Eubalaena glacialis*); the Fin Whale (*Balaenoptera physalus*); and the Blue Whale (*Balaenoptera musculus*) (collectively known henceforth as "Federally Protected Whales"). See 50 C. F. R. § 17.3. The Sei Whale Additionally, the Humpback Whale (*Megaptera novaeangliae*) is a federally protected species

2.      Mass Port is causing the ongoing ESA § 9(a) prohibited "takings" of members of ESA Listed Species. Mass Ports soliciting vessel traffic is also causing the prohibited taking by "harm" of these ESA Listed Species from the adverse altering of the environment of the listed its ESA designated critical habitat for this Endangered Whale in Massachusetts Bay. The noise pollution produced by the said vessel traffic is also adversely altering Federally Protected Whales habitat by the noise interfering with the whale's ability to communicate with other whales, their feeding, their caring of their young, and degrading these whales' health. and Citizen Attorney General M. A. X. is also bringing supplementary tort claims under the Massachusetts Torts Act against the Defendant as both a public and private nuisance and for its negligence in killing whales and destroying the marine environment of interest to the Public.

3.      The Defendant's current operation of industrial port facilities ("Port Operations") at the Port of Boston MA ("Port of Boston") on its own now constitutes a prohibited taking under the both ESA's § 9(g) as well as the take prohibitions of the Marine Mammal Protection Act. This is the result of its historical killing and injuring of Right Whales and other Federally Protected Whales that have never been cured in a court of law. Two of these historical killing of Right Whales are as follows. In August 2016 a ship headed to the Defendants' Port Operations struck and killed off Cape Cod in Massachusetts a baby Northern Right Whale. In April 2017 a ship heading to the Defendant Port Operations struck and killed off of Race Point in Provincetown MA a baby Northern Right Whale.

4.      The Right Whales population is declining. In 2020, the National Marine Fisheries Service issued a report that found that between 2018-2019 – the remaining Right Whale population lost over ten percent of its remaining members – in the span of a single year. There are now less than 380 of these whales left in the entire world. The entire global population of Right Whales live in US coastal waters crossed by the shipping lanes used by the large vessels that are solicited by Mass Port to use its Port Operations. The Port Operations are inflicting irreparable injury on the Right Whales by preventing the recovery of their species from its endangered species status. If it were not for the Defendant's Port Operations Federally Protected Whales would not have been

---

under the Marine Mammal Protection Act along with all the other whale species protected under the ESA.

killed and injured in the past by these large ships and will not be struck by these struck, killed and injured by similar large ships in the future.

5.   The Citizen Attorney General is seeking declaratory and injunctive relief from the Court on his Endangered Species Act & Marine Mammal Protection Act claims to stop the Defendant's Port Operations from further causing the further killing and injuring of any member of a Federally Protected Whale species. The Citizen Attorney General also seeks a permanent injunction that will force the Defendant to prevent its future said prohibited takings of Federally Protected Whales that has been ongoing since at least the year the ESA/MMPA was adopted in 1973. The People are seeking to have the Court —

  a. Declare that the Defendant's ongoing Port Operations currently constitute a prohibited taking pursuant to the ESA & MMPA's prohibitions against the taking of endangered marine mammals.

  b. A permanent injunction against the Defendant to conduct their Port Operations in the future in a manner that outside experts rate as "Whale Safe" and that does not pose any significant risk of causing ships using its Port Facilities to strike members of any species of Federally Protected Whale. **FN4**

  c. Order the Defendant to fund court approved proactive conservation efforts to restore the populations of Federally Protected Whales to levels that they would enjoy if not depleted by years of being killed and otherwise unlawfully taken by the Defendant's Port Operations.

6.   The Citizen Attorney General is seeking a jury trial. Both on his request for declaratory relief on his ESA & MMPA claims and on his tort claims. The People are seeking an award of compensatory and punitive damages against the Defendants needed to fund the sought for proactive recovery program and paid for by the Defendant.

---

[4] "Whale Safe" activity is defined for purposes of the instant action is an activity that — if necessary — is managed so as not to be expected to cause on an annual basis a single incident of prohibited taking of a listed species of a Federally Protected Whales.

## Background on the Conservation Biology of Federally Protected Whales

7.    Federally Protected Whales are resident species of the northeastern coastline of the United States. They routinely inhabit bays and inlets of northeastern coastal states — including Boston Harbor. Massachusetts has designated Northern Right Whales, Blue Whales, Fin Whales Humpback Whales and Sei Whales as resident native species and listed them as designated endangered wildlife under the Massachusetts Endangered Species Act. As stated, most of Massachusetts Bay and the Great South Channel has been designated under the ESA as listed critical habitat for the Northern Right Whale. In the Summer of 2006, a Humpback Whale was routinely sighted for a period of months in Boston Harbor near the Port Operations of the Defendant.

8.    Large cargo and passenger carrying ships transiting in the designated shipping lanes of the northeastern U. S. coastline are commercially solicited and/or contracted by the Defendant to visit its Port Operations in the Port of Boston. In accepting the Defendant's commercial solicitation, these large vessels routinely strike Federally Protected Whales. Ship strikes on whales are an increasing problem along the United States coastline. Ship strikes now account for at least half the anthropogenic mortalities inflicted on Federally Protected Whales. Most Federally Protected Whales bear numerous scars from being individually struck by ships in the past and barely surviving the encounter. Because the ships using the Defendant's Port Operations are large cargo and cruise ships, they easily kill and seriously injure Federally Protected Whales when they strike them one single time.

9.    Both Northern Right Whales and Humpback Whales species have been both designated by the National Oceanic and Atmospheric Agency ("NOAA") to be experiencing in 2021 an ongoing "Unusual Mortality Event" ("UME"). This means that members of these species are dying in numbers exceeding greatly what is expected from just natural causes. A UME constitutes an emergency crisis situation for these Federally Protected Whales under the provisions of the MMPA. Many of these UME mortalities are caused by large ships that transit to and from the Defendant's Port Operations.

11.     In June 2020, NOAA published a report extolling the ongoing killing and injuring of Right Whales by ships transiting to and leaving the Defendant's Port Operations. **FN5** There is no question that hundreds of large cargo and passenger ships currently transiting through Right Whale Critical Habitat do so directly in response to the Defendant's Port Operations. If the Defendant's Port Operations were not providing these ships the ability to dock at the Port of Boston, these ships would not be transiting the coastal waters of Massachusetts Bay, the Gulf of Maine and the Great South Channel. Federally Protected Whales would not be struck by these ships if they were not operating in U. S. northeastern coastal waters to utilize the Port Operations of the Defendant. Federally Protected Whales along the northeastern U. S. coastline would face a significant decrease in their chances of being struck by a ship if the Defendant's Port Operations were suddenly stopped or were conducted in a manner that is Whale Safe — including if the Defendant imposed a requirement for ships seeking to use its Port Operations that they must observe a 10 Kt speed limit when approaching within 30 miles of the Port of Boston.

12.     The Defendant's Port Operations causing the prohibited taking of Federally Protected Whales over the years has inflicted an enhanced threat of extinction on these whales ("Enhanced Extinction Threat") as a direct result of the reduction of overall numbers inflicted on these species remaining populations by the Defendant's ongoing port operation since 1973. For example, the current size of the remaining population of the Northern Right Whale is much smaller than it would otherwise be without the Defendant's five decades of unlawful killings of its members by the Defendant's Port Operations. As a direct result of the Defendant's causing its current smaller population size that it otherwise would have been, the Northern Right Whale is afflicted with a permanent greater likelihood of extinction from this fact alone. **FN6** Causing an Enhanced Extinction Threat is a violation of § 9(a and g) of the ESA and the MMPA also.

---

[5] June 2020. "North Atlantic Right Whale (*Eubalaena glacialis*) Vessel Speed Rule Assessment." NOAA Fisheries, Office of Protected Resources. Last retrieved January 2021 (https://media.fisheries.noaa.gov/2021-01/FINAL_NARW_Vessel_Speed_Rule_Report_Jun_2020.pdf?null).

[6] The Defendant's unlawful killings have cause the current remaining populations of these endangered species to be smaller than they would have been had they not been subject to the Defendant's and its business partners engaging in the prohibited causing of the prohibited killing of Federally Protected Whales. The Defendant's reduction in the size of the remaining populations of endangered species of Federally Protected Whales has enhanced the likelihood of

13.     Upon information and belief the Defendant has NOT been issued any permit by the National Marine Fisheries Service ("NMFS") to allow it to lawfully take any listed species of Federally Protected Whale. Section 10 of the ESA provides for the issuing of permits to immunize it from ESA § 9 liability resulting for its Port Operations taking listed of Federally Protected Whales.

### Federally Protected Whales are Routinely Killed and Injured from Ship Strikes

14.     Federally Protected Whales are now regularly struck by ships along the United States coastline. Federally Protected Whales face a significant threat of being struck by ships when they inhabit areas where there is significant ship traffic. For example, ships operated by Coast Guard routinely strike and kill Federally Protected Whales in U. S. coastal waters. See *Strahan v, Linnon*, 967 F. Supp. 581, 632 (D. Mass. 1997), A Sei Whale was found impaled on a vessel when it docked at a pier operated by the Defendant in Boston Harbor. In May of 2007, a Humpback Whale was struck and killed by a ship heading to Boston Harbor to use the Defendant's Port Operations. Commercial Whale Watch ships routinely strike and kill Federally Protected Whales. These are a few known examples. Most of the ship strikes caused by the Defendant go unreported.

15.     Ship strikes on Federally Protected Whales along the U. S. coastline is such a routine happening that Massachusetts and NOAA has repeatedly acted to reduce the speed of ships operating in New England coastal waters to protect Federally Protected Whales. **FN7** The NMFS has adopted regulations to protect Federally Protected Whales that impose speed limits on vessels crossing Right Whale Critical Habitat and in shipping lanes leading to other ports along

---

these species going extinct and prevented any possible recovery form their endangered status that they would have achieved without the adverse impact of the Defendant's unlawful takings of their members. The "small population" effect in conservation science asserts that the smaller a population becomes its chances of extinction rise exponentially. Even if the Court enjoins the Defendant from further killings of the said endangered species, the enhanced threat of extinction that the Defendant's created by depleting these populations for years remains and therefore the Defendant's continue to injure the People and its Public Interest.

[7] Last retrieved on 22 January 2021 (https://www.fisheries.noaa.gov/national/endangered-species-conservation/reducing-vessel-strikes-north-atlantic-right-whales)

the US Atlantic coastline. **FN8** NOAA also adopted a regulation prohibiting any vessel from approaching within 500 yards of a Northern Right Whale. **FN9** The state of Massachusetts has done the same. See 322 C. M. R. § 12.00 et seq.

16.    In 2001, the International Maritime Organization ("IMO") adopted regulations to protect Northern Right Whales from being hit by ships transiting to Boston Harbor to use the Defendant's Port Operations. The IMO now requires that large ships — the kind that is serviced by the Defendant's Port Operations — approaching Boston Harbor must report their location, speed and other information to the U. S. Coast Guard. See 20 November 2001 Federal Register at 66 FR 58066. In April 2006, the IMO adopted a rule moving the required shipping lanes to be relocated a few milesf rom then existing lanes to reduce the chances of a Northern Right Whale being struck by a ship entering and leaving Boston Harbor to use the Defendant's Port Operations.

17.    NOAA's current speed rule for large vessels imposes speed limits on these ships heading towards and leaving Boston harbor to use the Defendant's Port Operations in order to lessen the chances of a Northern Right Whale being hit by one of these ships. The rule imposes a 10 Kt speed limit zone for ships starting at the entrance of the Port of Boston and extending outwards in a full radius to a distance of thirty miles from the Port of Boston. See 71 FR 36299. In in addition NMFS imposes speed limits on large vessels in designated areas it titles as "Seasonal Management Areas" for Right Whales ("SAM"). These SAM's cover extensive areas in Massachusetts Bay going southward to Georges Bank and around Nantucket Island. Additionally NMFS implements emergency "slow zones" that imposes speed limits on large vessels to protect unexpected aggregations of Right Whales. At this time, NMFS has declared a "slow zones" around Nantucket Island to protect a current aggregation of Right Whales located there and that is effective till the end of January 2021.

---

[8] 50 CFR § 224.105

[9] 13 February 1997 **Federal Register.**  62 FR 6729. Last retrieved on 22 January 2021 (https://www.govinfo.gov/content/pkg/FR-1997-02-13/pdf/97-3632.pdf)

### The Port of Boston "Causes" Federally Protected Whales to be Struck by Ships

18.     Most large ships operating U. S. coastal waters off the New England coast are there for one reason, to dock and do business with the Defendants Port Operations at the Port of Boston. If the Defendants did not solicit ships to enter these US coastal waters, these ships would not be there at all. They would not be able to strike, kill and injure Federally Protected Whales. Without the Defendant's Port Operations there would be no large ships operating in Right Whale Critical Habitat that now strike and kill Federally Protected Whales.

### Parties

19.     Citizen Attorney General Man Against Xtinction is an association currently comprising just one person, Richard Max Strahan ("Strahan"). Strahan is a citizen of the United States, a conservation biologist, serves as the National Campaign Director for Whale Safe USA an environmental movement that seeks to implement conservation plans for endangered species of whales and sea turtles. His business address is % Whale Safe USA, 83 Main Street, 6080 GSS, Durham NH 03824.

20.     Defendant the Massachusetts Port Authority ("Mass Port"), is a legal entity created by an act of the Massachusetts legislature. Its main address is Mass Port, The Logan Office Center, One Harborside Drive, Suite 200S, East Boston, MA 02128-2909.

### Jurisdiction and Standing

21.     The Court has jurisdiction over the subject matter of this action by virtue of 28 U. S. C. § 1331 (action under the laws of the United States); 16 U. S. C. § 1540(c) (action arising under the ESA); 16 U. S. C. § 1540(g) (citizen suit provision of the ESA) and Declaratory Judgment Act 28 U. S. C. §§ 2201-2202 (power to issue declaratory judgment). Pursuant to § 11(g) of the ESA, the Citizen Attorney General has previously sent written notice to each of the Defendant — and the Secretary of the Department of Commerce and its infra-agency NMFS — informing them of his intent to bring suit against the Defendant if it does not voluntarily stop its said unlawful takings of listed endangered species. Enforcement agents for NOAA and Massachusetts Division of the Environmental Police has informed the Citizen Attorney General that they have no intention of enforcing the MESA/ESAMMPA's take prohibitions against the Defendant.

22.     The Court has jurisdiction to enforce MMPA's take prohibitions owing to the fact that they are more protective than those of the ESA. The last section of the ESA explicitly requires that the MMPA is to be used to protect the endangered marine mammals over the requirements of the ESA if they are found to be more protective. Since the People can prosecute the Defendant under the ESA it follows as a matter of law that they can also prosecute the Defendants for engaging in conduct prohibited by the take prohibitions of the MMPA. **FN10**

23.     The Citizen Attorney General is an avid whale watcher, licensed lobsterpot fishermen by the state of Massachusetts and New Hampshire, and a WSUSA professional endangered species recovery agent. The Citizen Attorney General has standing to bring the instant civil action owing to his extended professional history of researching and developing conservation plans for species of Federally Protected Whales, as a commercial fisher, and as a whale watcher. The Supreme Court ruled in that "whale watchers" having standing to bring suits to protect whales from unlawful injury by a private or government defendant. **FN11** Strahan also has standing to bring suit to protect Federally Protected Whales as a "zone of interest" because the protected status of these species causes his commercial lobster pot fishing to be harshly regulated by NMFS and Massachusetts to protect endangered whales. [12] If the Defendant killed fewer Federally Protected Whales, Strahan's lobster pot fishing would not be so harshly regulated by Massachusetts and NMFS to protect these same listed endangered species.

24.     This Court has repeatedly found Strahan to have standing to act as a "citizen attorney general" and to bring civil actions under the ESA to enforce the take prohibitions of the ESA in order to protect listed species of Federally Protected Whales from prohibited takings in the Atlantic Ocean. More than sixty days ago Strahan served the Defendant pursuant to 16 U. S. C. § 1540(g) a notice of his intent to bring suit for the claims that he raises in the instant complaint.

---

[10] ESA §17 [16 U.S.C. 1543]: "Except as otherwise provided in this Act, no provision of this Act shall take precedence over any more restrictive conflicting provision of the Marine Mammal Protection Act of 1972."

[11] *Japanese Whaling Association v. American cetacean Society*, 478 U.S. 221 (1986).

[12] *Bennett v. Spear*, 520 U.S. 154 (1997)

### Citizen Attorney Generals' Claims Against the Defendant

COUNT I:     Violation of § 9(g) of the Endangered Species Act and § 1372(a) the Marine Mammal Protection Act: The Defendant's Prohibited Operation of Port Facilities that Cause Prohibited Killing, Injuring and Otherwise Unlawful Taking of Federally Protected Whales.

25..     Citizen Attorney General re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 24 of this Complaint.

26.     The Defendant's Port Operations are currently constitute on their own as a continuing and repeating conduct prohibited by the ESA's § 9(g). The Defendant's Port Operations have repeatedly caused Federally Protected Whales to be struck, killed and injured by ships using its facilities and will continue to do so into the future. FN[13] Ships pose a significant threat to strike, kill, and injure a Federally Protected Whale anywhere these whales and ships occupy the same marine habitat. Ships pose a significant threat to strike, kill and injure whales along the northeastern U. S. coastline, NMFS itself claims that this is a fact and has repeatedly attempted to regulate ship traffic to protect whales from being struck by ships heading into Boston Harbor. Ships striking, killing and injuring Federally Protected Whales constitutes conduct prohibited by the ESA's § 9(a) and the MMPA's § 1372(a). Since the Defendant's Port Operations "cause" ESA/MMPA prohibited conduct — the killing and injury of listed endangered species — these same Port Operations are now prohibited on their own by the ESA/MMPA's take prohibitions. Every day that the Defendant now conducts its unlawful Port Operations — whether a Federally Protected Whale is struck by a ship or not on that day — it is engaged in conduct that is now prohibited by the ESA/MMPA's take prohibitions.

27.     The Northern Right Whales population is declining. ANY further ESA/MMPA prohibited taking of Northern Right Whales by any whale being struck by large vessels solicited by the Defendant's Port Operations will have an adverse impact on the species ability to recover. Any further ship strikes on Right Whales will inflict irreparable injury on these whales and the Public Interest in them.

28.     Unless the Court grants the Citizen Attorney General his requested injunctive relief to stop the Defendant's Port Operation from striking, killing, and injuring Federally Protected

---

[13] *Strahan v. Coxe*, 127 F3d 155 (1st Cir 1997).

Whales, it will continue its said prohibited conduct and many more Federally Protected Whales will be killed and injured by the Defendant which will precipitate these endangered species into an irreversible path to imminent extinction.

COUNT II:   Violation of § 9(a) of the Endangered Species Act: The Defendant Prohibited Taking of Federally Protected Whales and Adverse Alteration of Listed Designated Critical Habitat for the Northern Right Whale.

29.     Citizen Attorney General re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 28 of this Complaint.

30.     The Defendant's Port Operations are commercial business conducted with the very shipping companies whose ships use the Defendant's Port Operations. As a result the Defendant shares liability with the ships utilizing its Port Operations for these ships striking, killing and injuring Federally Protected Whales. The Defendant's and these ships striking, killing and injuring of Federally Protected Whales is conduct prohibited by the ESA's § 9(a) take prohibitions that prohibit taking by "harm." **FN14** The Defendant's Port Operation adversely alter the Right Whales critical habitat with noise pollution and ship traffic "which actually kills or injures Federally Protected Whales and results in significant habitat modification or degradation."

31.     The Defendant's also share liability with the operators' of the large ships using its Port Operations for these ships adversely altering the protected critical habitat of the Northern Right Whales in Cape Cod Bay and in the Great South Channel. On 3 June 1994, the National Marine Fisheries Service issued a final rule designating most of Cape Cod Bay in Massachusetts as a listed critical habitat for the Northern Right Whale. See 59 Fed. Reg. 28,793. The Defendant and its shipping business partners take Northern Right Whales by "harm" as prohibited by the ESA's § 9(a) when they alter the Northern Right Whales critical habitat that causes it to be killed or injured. Massachusetts Bay is wholly designated as of 2016 as ESA Critical Habitat for the Right Whale. **FN15**

---

[14] 50 CFR § 222.102: "Harm in the definition of "take" in the Act means an act which actually kills or injures fish or wildlife. Such an act may include significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including, breeding, spawning, rearing, migrating, feeding or sheltering."

[15] 50 CFR § 226.203: 27 February 2016 **Federal Register** 81 FR 4838 – 4874.

## PRAYER FOR RELIEF

WHEREFORE the Citizen Attorney General asks the Court for the following relief —

I. For a judgment declaring that the Defendant's Port Operations on its own is now conduct prohibited by ESA § 9(a & g) and MMPA § 1372(a) from its engaging in the operation of port facilities that solicits Ocean traversing large ships to come to Boston Harbor by transiting Massachusetts Bay and other coastal waters that historically and currently "causing" these large vessels to strike, kill and injure Federally Protected Whales living in the same U. S. coastal waters.

II. For an order, requiring the Defendant to refuse to allow any ship to dock at its facilities unless the said ship has agreed to reduce its speed to 10 knots when it is within one hundred miles of the port of Boston or otherwise not approach at all within 100 miles of its Port Operations until it is "Whale Safe" to do so.

III. For an order, requiring the Defendant to apply to NMFS for an incidental take permit pursuant to the provisions of § 10 of the ESA in regards it's the taking of Federally Protected Whales as a result of its operation of its Port Facilities.

IV. For an order, enjoining requiring the Defendant to financially and otherwise support private pro-active recovery efforts to increase the size of each of the populations of Federally Protected Whales to a level consummate to what that population would be currently if it were not adversely affected by five decades of killing and injuring by the Defendant's Port Operations.

V. For an award to the People of $100,000.00 in compensatory damages and $1,000,000.00 in punitive damages that will be directed to in field recovery efforts for the Right Whale and other Federally Protected Whale species.

VI. For an award of the Citizen Attorney General's direct costs of prosecution against the Defendant.

VII. For any further relief that the Court deems appropriate.

By:

/s/ Richard Maximus Strahan

_____
Richard Maximus Strahan
Chief Science Officer
Whale Safe USA
617-817-4402

## VERIFICATION OF THE COMPLAINT

I Richard Maximus Strahan verify under the pains and penalties of perjury that all the facts alleged in the above complaint are known to the best of my ability to be true. Signed under the pains and penalties of perjury this 22nd of January in the year two thousand and twenty-one.

/s/ Richard Maximus Strahan