UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MAN AGAINST XTINCTION, <br><br> Plaintiff, <br><br> v. <br><br> MASSACHUSETTS PORT AUTHORITY, <br><br> Defendant. | Case No. 21-cv-10185-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                          **February 4, 2022**

**I.      Introduction**

Plaintiff Richard Maximus Strahan ("Strahan"), referring to himself as "Man Against Xtinction" in his complaint, has filed this lawsuit against the Massachusetts Port Authority ("Massport") alleging violations of Sections 9(a) and 9(g) of the Endangered Species Act ("ESA"), codified at 16 U.S.C. § 1538(a) and (g), arising from the injuring or killing of endangered whales by vessels transiting to and from the Port of Boston, which Massport operates.  D. 1.  Massport now moves to dismiss for lack of subject matter jurisdiction and failure to state a claim, D. 14, and for dismissal pursuant to Fed. R. Civ. P. 41(b), D. 36.  Strahan moves for leave to file an amended complaint, D. 38, and for a temporary restraining order and preliminary injunction, D. 43.  For the reasons stated below, the Court ALLOWS Massport's first motion to dismiss, D. 14, DENIES Massport's second motion to dismiss as moot, D. 36, DENIES Strahan's motion for leave to file an amended complaint, D. 38, and DENIES Strahan's motion for injunctive relief as moot, D. 43.

1

## II. Standard of Review

### A. Subject Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant can move to dismiss based upon a lack of subject matter jurisdiction. "Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed." Fábrica de Muebles J.J. Álvarez, Incorporado v. Inversiones Mendoza, Inc., 682 F.3d 26, 32 (1st Cir. 2012) (quoting Viquiera v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)). Once a defendant challenges the jurisdictional basis for a claim in federal court pursuant to Fed. R. Civ. P. 12(b)(1), a plaintiff has the burden of proving by a preponderance of the evidence the facts supporting jurisdiction. Padilla-Mangual v. Pavía Hosp., 516 F.3d 29, 31 (1st Cir. 2008).

### B. Failure to State a Claim

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

### III. Factual Background

The following factual allegations in Strahan's complaint, D. 1, are accepted as true for consideration of the motions to dismiss.

#### A. **Federally Protected Whales**

Several species of whale federally protected under the ESA reside in waters along the northeastern coastline of the United States. D. 1 ¶¶ 1, 7; see 50 C.F.R. § 17.11(h) (listing species protected under ESA). These whales routinely inhabit bays and inlets, such as Boston Harbor. D. 1 ¶ 7. When they inhabit areas with significant ship traffic, the whales face a heightened threat of being struck by ships. Id. ¶ 14. Such "ship strikes" now regularly occur along the United States coastline and account for a substantial portion of human-caused deaths inflicted upon protected whales. Id. ¶¶ 8, 14. Numerous ship strikes injuring or killing federally protected whales have occurred off the Massachusetts coast in recent decades. See id. ¶¶ 3, 14. Such whales also suffer from noise pollution created by vessel traffic. Id. ¶ 2.

Various federal and state entities maintain regulatory authority over ships operating in New England coastal waters and have taken steps to reduce ship strikes. See id. ¶¶ 15–17. For example, the National Marine Fisheries Service ("NMFS"), part of the United States Department of Commerce, is the federal agency principally responsible for the conservation and protection of whale species listed under the ESA. See 16 U.S.C. § 1531 et seq. NMFS has adopted regulations imposing speed limits on vessels crossing right whale critical habitat and in shipping lanes leading to ports along the Atlantic coastline. D. 1 ¶¶ 15, 17; see 50 C.F.R. § 224.105. NMFS has also adopted a regulation prohibiting any vessel from approaching within 500 yards of a northern right whale. D. 1 ¶ 15; see 50 C.F.R. § 224.103(c). The Massachusetts Division of Marine Fisheries has done the same. D. 1 ¶ 15; see 322 C.M.R. § 12.08. Additionally, the United States Coast

Guard has promulgated regulations establishing a mandatory ship reporting system for large vessels entering coastal waters off Massachusetts for the purpose protecting northern right whales. See 33 C.F.R. §§ 169.100–169.140; see 14 U.S.C. § 522.

### B. Plaintiff Strahan

Strahan is an avid whale watcher, lobsterpot fisherman licensed in Massachusetts and New Hampshire and "professional endangered species recovery agent." D. 1 ¶ 23. In these capacities, he has an "extended professional history of researching and developing conservation plans for species" of federally protected whales. Id. Strahan asserts that the listed status of protected whales offshore Massachusetts "causes his commercial lobster pot fishing to be harshly regulated by NMFS and Massachusetts to protect" such whales. Id.

### C. Defendant Massport

Massport operates industrial port facilities at the Port of Boston. Id. ¶¶ 1, 3. As alleged, "[m]ost large ships operating [in] U.S. coastal waters off the New England coast" dock at the Port of Boston to load and unload cargo and passengers. Id. ¶ 18; see id. ¶¶ 8, 11.

The Massachusetts legislature established Massport as "a body politic and corporate" pursuant to Chapter 465 of the Acts and Resolves of 1956. See 1956 Mass. Acts c. 465, § 2. This enabling act vested Massport with title to certain "port properties." Id. § 6. It also conferred on Massport the authority and responsibility to improve, maintain, operate and lease projects under its control. Id. § 3(g). Under the act, Massport may establish rules and regulations for the use of its properties, id., and it has done so with respect to its port properties, see 740 C.M.R. § 3.00.

## IV. Procedural History

Strahan commenced this action on February 3, 2021. D. 1. Massport moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. D. 14. Massport subsequently

4

moved to dismiss for Strahan's failure to comply with the Federal Rules of Civil Procedure, this Court's Local Rules and this Court's scheduling order. D. 36. Strahan moves for leave to file an amended complaint, D. 38, and for a temporary restraining order and preliminary injunction, D. 43. The Court heard the parties on the pending motions and took the matters under advisement. D. 44.

V.    **Discussion**

    A.    **Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim**

Strahan's complaint states two counts against Massport: Count I alleges a violation of Section 9(g) of the ESA, which makes it "unlawful for any person subject to the jurisdiction of the United States to attempt to commit, solicit another to commit, or cause to be committed, any offense defined in [Section 9]." D. 1 ¶¶ 25–28; see 16 U.S.C. § 1538(g). Count II alleges a violation of Section 9(a), which prohibits the "tak[ing]" of any listed endangered species within the United States or the territorial seas of the United States. D. 1 ¶¶ 29–31; see 16 U.S.C. § 1538(a). As relief, Strahan seeks a permanent injunction requiring Massport to conduct its port operations in a "whale safe" manner, D. 1 ¶ 5,[1] including by limiting vessel speeds within one hundred miles of the Port of Boston, id. at 12.

        1.    *Notice*

As a threshold matter, Massport argues that Strahan's complaint should be dismissed because he failed to provide written notice of his intent to sue as required by the ESA. D. 15 at

---

[1] On the same day as the hearing on the motions to dismiss and motion for leave to file an amended complaint, Strahan filed a motion for a temporary restraining order and preliminary injunction, D. 43.

15.[2]  Under the ESA, no citizen suit may be commenced "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation."  16 U.S.C. § 1540(g)(2)(A); see id. § 1532(15) (defining "Secretary" as "the Secretary of the Interior or the Secretary of Commerce as program responsibilities are vested").  Courts "strictly" apply this requirement.  Me. Audubon Soc. v. Purslow, 907 F.2d 265, 268 (1st Cir. 1990) (citation omitted); see Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 520 (9th Cir. 1998) (stating that the "sixty-day notice requirement is jurisdictional").  To satisfy the notice requirement, a plaintiff must "provide sufficient information of a violation so that [the defendant] could identify and attempt to abate the violation."  Sw. Ctr. for Biological Diversity, 143 F.3d at 522.

    Massport asserts that it "has no such notice in its care, custody or control."  D. 15 at 15.  Strahan, however, has submitted a copy of an October 1, 2018 email giving notice of his "intent to bring suit" for Massport's alleged violations of the ESA by its "operating port facilities that act in concert with shipping companies" whose vessels "strike, kill, injure and otherwise take endangered species of whales."  D. 31-1 at 1; see Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002) (stating that a district court may consider materials outside the pleadings on a Rule 12(b)(1) motion).  The email lists both the United States Secretary of Commerce and the chief executive officer of Massport as recipients and claims also to have been "Served VIA USPS First Class."  D. 31-1 at 1; see D. 31 ¶ 1.  Although Strahan sent the email under the letterhead "Whale Safe USA" and did not mention the title "Man Against Xtinction," he identified the notice as coming from "Whale Safe USA, me and our affiliates" and signed as "Richard Maximuvs

---

[2] The Court ALLOWS *nunc pro tunc* Massport's motion for leave to file a reply in support of their motion to dismiss, D. 33, and has considered the proposed reply in resolving the motion to dismiss, see D. 34.

Strahan," which would have put Massport on adequate notice of the email's sender. See D. 31-1 at 1–2. Strahan, therefore, has established by a preponderance of the evidence, see Padilla-Mangual, 516 F.3d at 31, that he provided written notice containing sufficient information about the alleged violation to both the Secretary and Massport more than sixty days prior to filing suit.[3]

    2.    Preclusion

Massport also argues that the dismissal of a prior action against it precludes Strahan's present claims. D. 15 at 16. In 2007, Strahan filed a complaint in this district against Massport containing nearly identical allegations and causes of action as here. See D. 14-6 (Complaint, Strahan v. Mass. Port Auth., No. 07-12136-JLT (D. Mass. Nov. 14, 2007)); see also D. 31 ¶ 3 (admitting that "[t]he instant action is seeking the same identical relief based on the same cause of action by the same plaintiff"). The court dismissed Strahan's complaint for lack of subject matter jurisdiction, concluding that Strahan failed to satisfy the standing requirements of Article III of the United States Constitution. See D. 14-8 at 2 (Strahan v. Mass. Port Auth., No. 07-12136-JLT (D. Mass. Mar. 27, 2008)).

Massport relies upon claim preclusion, which requires (1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits and (3) sufficient identicality between the parties in the two suits. See Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 583 (1st Cir. 1995) (citation omitted); D. 15 at 16–17. Ordinarily, "a dismissal for lack of subject matter jurisdiction is not considered to be 'on the

---

[3] Strahan alternatively argues that notice provided to Massport for a 2007 action satisfies the notice requirement in this action. See D. 31 ¶¶ 2–3. However, new notice is required once a party has litigated the claim for which he has provided notice. See Strahan v. New England Aquarium, 25 F. App'x 7, 10 n.2 (1st Cir. 2002) (stating that new notice was required because Strahan had litigated a different case in the interim involving a substantially identical takings claim). Because Strahan litigated the ESA claim against Massport for which he had provided notice in 2007, that notice cannot satisfy the notice requirement in this action.

merits,' and therefore is without res judicata [claim preclusion] effect." Muñiz Cortes v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000).

At a minimum, however, the doctrine of issue preclusion applies here. Issue preclusion "bar[s] relitigation of an issue decided in an earlier action where: (1) the issues raised in the two actions are the same; (2) the issue was actually litigated in the earlier action; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was necessary to that judgment." Manganella v. Evanston Ins. Co., 700 F.3d 585, 591 (1st Cir. 2012). Although dismissal for lack of subject matter jurisdiction will not bar a party from relitigating a claim under the doctrine of claim preclusion, such dismissal "precludes relitigation of the issues determined in ruling on the jurisdictional question." Muñiz Cortes, 229 F.3d at 14; Perry v. Sheahan, 222 F.3d 309, 318 (7th Cir. 2000) (rejecting that "dismissals for lack of jurisdiction have no preclusive effect at all" and stating that "[a] dismissal for lack of jurisdiction precludes relitigation of the issue actually decided, namely the jurisdictional issue"); see, e.g., Coll. Sports Council v. Dep't of Educ., 465 F.3d 20, 22 (D.C. Cir. 2006) (per curiam) (holding previous dismissal for lack of standing had preclusive effect where there were "no material differences" between the complaints in the first and second actions); Dicion v. Mann Mortg., LLC, No. CIV. 14-00252 JMS, 2014 WL 5827137, at *7 (D. Haw. Nov. 10, 2014), aff'd, 718 F. App'x 476 (9th Cir. 2017) (holding that issue preclusion barred claim previously dismissed for plaintiff's inability to establish injury in fact).

In Strahan's 2007 case, the court "actually" and "necessar[ily]" determined the issue of Article III standing in its order of dismissal. See Manganella, 700 F.3d at 591; Osediacz v. City of Cranston, 414 F.3d 136, 139 (1st Cir. 2005) (stating that "standing to sue is an indispensable component of federal court jurisdiction"); D. 14-8. The "'irreducible constitutional minimum' of

standing" requires: (1) that the plaintiff has suffered an "injury in fact," that is, an invasion of a judicially cognizable interest; (2) that the injury be "fairly traceable" to the challenged action of the defendant and not the result of the independent action of a third party not before the court; and (3) that it be likely, not merely speculative, that the injury will be redressed by a favorable decision. Bennett v. Spear, 520 U.S. 154, 167 (1997) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). Considering this test, the court concluded that Strahan satisfied the "injury in fact" requirement based upon his alleged interest in protected whales as an "avid whale-watcher" and "professional endangered species recoverer." See D. 14-8 at 3 (citing Bennett, 520 U.S. at 167; Defs. of Wildlife, 504 U.S. at 562–63 (noting that desire to observe animal species for aesthetic reasons qualifies as a cognizable interest for standing purposes)).

The court, however, concluded that Strahan failed to meet the traceability and redressability requirements. Id. at 3–4. Strahan failed to satisfy the traceability requirement because Massport "does not operate any of the ships that may conceivably come into contact with the whales. The responsibility for complying with environmental law . . . must lie with the vessel operator, and not with the entity that attracts or permits the vessel to come into Boston." Id. at 4 (citing Strahan v. Linnon, No. 97-1787, 1998 WL 1085817, at *4 (1st Cir. 1998) (declining to hold Coast Guard "liable for takings by non-Coast Guard vessels that it permits to operate" because a "vessel owner or operator is an independent actor who is, himself, responsible for complying with environmental and other laws")). Moreover, Strahan failed to satisfy the redressability requirement because "[e]ven if the court granted the relief that Plaintiff seeks, and required [Massport] to impose a speed limit, [Massport] would have no way to enforce that speed limit. Unlike the Coast Guard, [Massport] has . . . neither the authority nor the means by which to cite or stop a speeding vessel." Id.

Given this prior dismissal, issue preclusion bars "relitigation of the issues determined in ruling on the jurisdictional question"—namely, whether Strahan satisfies the Article III standing requirements based upon the facts alleged in his 2007 complaint. See Muñiz Cortes, 229 F.3d at 14. The Court observes "no material differences" between the allegations in Strahan's 2007 complaint and those in this case. Cf. Coll. Sports Council, 465 F.3d at 22. Both complaints essentially allege that, but for Massport providing facilities and services for large cargo and passenger ships to dock at the Port of Boston, such ships would not strike, injure and kill federally protected whales. Compare D. 14-6 ¶¶ 2, 6, 13 with D. 1 ¶¶ 4, 11, 18. Further, neither complaint alleges that Massport has authority to regulate vessel speed limits or enforce such limits. See generally D. 14-6; D. 1. For all these reasons, Strahan may not relitigate the same issue here and lacks standing.[4]

    3.    *ESA Claims*

Massport further argues that Strahan fails to state a claim for relief under the ESA because his complaint does not allege any conduct by Massport that constitutes the legal cause of an unlawful taking. D. 15 at 18. The ESA makes it unlawful for any person to "take" any endangered species within the United States or the territorial seas of the United States, 16 U.S.C. § 1538(a)(1)(B), or to "solicit" or "cause" another to do so, id. § 1538(g). The ESA defines "take" to mean "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." Id. § 1532(19). The ESA's implementing regulations further define "harm" to mean "an act which actually kills or injures wildlife." 50 C.F.R. § 17.3.

---

[4] In opposing preclusion, Strahan submits hearing transcripts from his prior lawsuit against Massport, see D. 45-1; D. 45-2; see Gonzalez, 284 F.3d at 288 (stating that a court "may consider [materials outside the pleadings] on a Rule 12(b)(1) motion"), but these materials do not alter the Court's legal analysis here.

According to Strahan, if Massport "were not providing [large cargo and passenger] ships the ability to dock at the Port of Boston, these ships would not be transiting the coastal waters of Massachusetts Bay, the Gulf of Maine and the Great South Channel." D. 1 ¶ 11; see id. ¶¶ 4, 18. Thus, Strahan contends, Massport "shares liability with the [shipping companies] utilizing its Port Operations for [their] ships striking, killing and injuring" federally protected whales. Id. ¶ 30.

Common-law principles of proximate causation govern the determination of liability under the ESA. Strahan v. Coxe, 127 F.3d 155, 163 (1st Cir. 1997). "[A]iding and abetting or otherwise giving assistance to those who have exacted a taking" does not "fall[] within the bounds of the common law concept of causation." Strahan v. Sec'y, Mass. Exec. Off. of Energy & Env't Affs., 436 F. Supp. 3d 470, 475 (D. Mass. 2020) (dismissing ESA claims). Here, Strahan relies upon a theory of but-for causation to link Massport's port operations and the shipping companies' alleged injuring or killing of federally protected whales. See D. 1 ¶¶ 4, 11, 18. Such a connection fails to satisfy common-law proximate causation principles, which rely upon "considerations of the fairness of imposing liability for remote consequences." See Aransas Project v. Shaw, 775 F.3d 641, 657 (5th Cir. 2014) (quoting Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or., 515 U.S. 687, 713 (1995) (O'Connor, J., concurring)) (holding that proximate causation did not exist where defendant government agency authorized activity causing taking of endangered species).

Prior ESA cases involving this plaintiff provide guidance. In Strahan v. Coxe, the First Circuit concluded that the Massachusetts Division of Marine Fisheries could be liable for the taking of endangered whales because the agency had "licensed commercial fishing operations to use gillnets and lobster pots in specifically the manner that is likely to result in a violation of federal law." Strahan v. Coxe, 127 F.3d at 164. "The causation [t]here, while indirect, [was] not so removed that it extend[ed] outside the realm of causation as it is understood in the common law."

11

Id. By contrast, Strahan v. Linnon upheld a grant of summary judgment in favor of the Coast Guard. Strahan v. Linnon, 1998 WL 1085817, at *4. The First Circuit concluded that, "by issuing the necessary permits to operate, the Coast Guard does not subject itself to liability for crimes, including takings, that actor may commit." Id. Rather, "[t]he vessel owner or operator is an independent actor who is, himself, responsible for complying with environmental and other laws." Id.; cf. Wishtoyo Found. v. Hattoy, C.A. No. cv-06-7603, 2007 US Dist. LEXIS 42951, *7–8 (C.D. Cal. Mar. 12, 2007) (stating that "a regulatory entity that 'exerts control' over an activity in a way that . . . [']purports to make lawful an activity that allegedly violates the ESA,' has engaged in a taking under the ESA," but "an agency that has no such control would not be a proper defendant in an ESA case" (quoting Loggerhead Turtle v. Cty. Council of Volusia Cty., Fla., 148 F.3d 1231, 1251 (11th Cir. 1998))).

Even as alleged, Massport's port operations align more closely with the Coast Guard's issuing of necessary permits, see Strahan v. Linnon, 1998 WL 1085817, at *4, than with the Division of Marine Fisheries' licensing of commercial fishing operations "in specifically the manner that is likely to result in a violation of federal law," see Strahan v. Coxe, 127 F.3d at 164; D. 1 ¶¶ 4, 11, 18 (alleging that large cargo and passenger vessels would not traverse the coastal waters of Massachusetts Bay but for Massport's commercial solicitations to the companies who operate such vessels). Here, Massport's mere operation of the Port of Boston amounts at most to "aiding and abetting or otherwise giving assistance to those who have exacted a taking." See Strahan v. Sec'y, Mass. Exec. Off. of Energy & Env't Affs., 436 F. Supp. 3d at 475. Such activity cannot give rise to liability under the ESA.

    *4.*  *State Tort Claims*

  Strahan's complaint also references "supplementary tort claims" purportedly brought under the Massachusetts Tort Claims Act, including for public nuisance. See D. 1 ¶ 2. Strahan, however, does not include these claims as separate counts, nor does he otherwise explain how his allegations support such claims. Accordingly, such tort claims are not before the Court.

  Even assuming *arguendo* that Strahan properly asserted his state tort claims, they fail. Given the Court's above dismissal of Strahan's ESA claims, the Court would lack jurisdiction over the state tort claims. When a court dismisses a foundational federal claim, it must reassess its jurisdiction over any supplemental state claims. Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). In such circumstances, "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation." Id. (describing factors as including "the interests of fairness, judicial economy, convenience, and comity"). No such factors favor retaining jurisdiction over state claims here, so the Court's dismissal of the ESA claims alone would justify dismissal of the state tort claims.

  Additionally, any public nuisance claim also fails on the merits. Massport cannot be liable for public nuisance unless it exceeds the authority vested in it by the legislature or violates applicable regulations. Town of Hull v. Mass. Port Auth., 441 Mass. 508, 517–19 (2004) (citing Hub Theatres, Inc. v. Mass. Port Auth., 370 Mass. 153, 155–56 (1976)). Strahan fails to allege any such exceedance of authority or regulatory violation.

  Moreover, Strahan does not allege a special injury arising from the challenged conduct. "A nuisance is public when it interferes with the exercise of a public right by directly encroaching on public property or by causing a common injury." Sullivan v. Chief Justice for Admin. & Mgmt.

13

of Trial Court, 448 Mass. 15, 34 (2006) (alteration and citation omitted).  A private plaintiff can maintain a public nuisance action only where that plaintiff can "show that the public nuisance has caused some special injury of a direct and substantial character other than that which the general public shares."  Id. at 34–35 (citation omitted).  Although Strahan "certainly has a particular interest in the enforcement of the [ESA], this special interest does not support the conclusion that [Strahan] has or will suffer 'a special injury of a direct and substantial character' as required by Sullivan."  Strahan v. Sec'y, Mass. Exec. Off. of Energy & Env't Affs., 436 F. Supp. 3d at 476 (citations omitted).  Rather, Strahan is "equally situated to other Massachusetts residents who have an interest in the continued existence of the right whale and the enforcement of federal law."  See id. at 476–77.  Strahan, therefore, fails to state a claim for relief against Massport.[5]

For all the reasons above, Massport's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim, D. 14, is ALLOWED.

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(b)

In addition to moving to dismiss for lack of subject matter jurisdiction and failure to state a claim, Massport moves to dismiss under Fed. R. Civ. P. 41(b) for Strahan's "willful and repeated disregard for the Federal Rules of Civil Procedure, this Court's Local Rules, and this Court's scheduling Orders, together with his willful and repeated misrepresentations to the Court."  D. 36.

---

[5] Strahan opposes dismissal on two further grounds.  First, he argues that "[t]he Petition Clause of the First Amendment protects [his] right to petition the federal courts."  D. 31 ¶ 5.  This right is, however, "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."  Christopher v. Harbury, 536 U.S. 403, 415 (2002).  Second, Strahan argues that Massport failed to comply with Local Rule 7.1, which provides that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."  D. Mass. L.R. 7.1; D. 31 ¶ 10.  Massport, however, stated in its motion that "[o]n April 22, 2021, counsel for Defendant and Plaintiff conferred in good faith regarding the relief requested in Defendant's motion to dismiss but were unable to resolve or narrow the issues presented."  D. 14 at 2.

Given the conclusions above regarding Massport's first motion to dismiss, D. 14, however, the Court DENIES Massport's second motion, D. 36, as moot.

### C.     Motion for Leave to Amend

Strahan moves for leave to file an amended complaint. D. 38. The proposed amended complaint adds three international shipping companies as defendants. See D. 38-1. It also alleges violations of Sections 9(a) and 9(g) of the ESA and Section 1372 of the Marine Mammal Protection Act arising from the taking of federally protected whales by the proposed defendants' shipping activity (Count I); violations of Sections 9(a) and 9(g) of the ESA arising from the proposed defendants' adverse alteration of designated critical habitat for the northern black whale (Count II); and a claim of public nuisance (Count III). See id. ¶¶ 30–41.

Massport argues that Strahan's motion should be denied because amendment would be futile. "Where an amendment would be futile or would serve no legitimate purpose, the district court should not needlessly prolong matters." Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 19 (1st Cir. 2001) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990)). Where the plaintiff seeks leave to amend before discovery is complete and neither party has moved for summary judgment, "amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." Id.

Amendment here would be futile. Strahan's proposed amended complaint rests on substantially similar factual allegations regarding Massport's participation in the challenged shipping activity as in his original complaint. See, e.g., D. 38-1 ¶ 2 (alleging that "Defendant Massport in its critical participation in the Shipping Activity supplies docking and cargo transfer operations for the exclusive use by the other Defendants"); see also id. ¶¶ 13–14. Strahan does

15

not allege new facts which, if proven, would entitle him to relief against Massport on any cognizable theory. See Hatch, 274 F.3d at 19. Strahan's proposed amended complaint also does not allege new facts that would cure the jurisdictional defects identified above with respect to his original complaint. Thus, the proposed amended complaint would be subject to dismissal for all the reasons justifying dismissal of Strahan's original complaint, rendering amendment futile with respect to Massport.

Accordingly, Strahan's motion for leave to file an amended complaint, D. 38, is DENIED.

### D. Motion for Temporary Restraining Order and Preliminary Injunction

Given the Court's conclusions above regarding Massport's motion to dismiss for lack of jurisdiction and failure to state a claim, D. 14, Strahan's motion for a temporary restraining order and preliminary injunction, D. 43, is DENIED as moot.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Massport's motion to dismiss for lack of jurisdiction and failure to state a claim, D. 14, DENIES Massport's motion to dismiss pursuant to Fed. R. Civ. P. 41(b) as moot, D. 36, DENIES Strahan's motion for leave to file an amended complaint, D. 38, and DENIES Strahan's motion for a temporary restraining order and preliminary injunction as moot, D. 43.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge